CLEMONS *v.* BEARDEN LBR. CO.

5-2968                                          370 S. W. 2d 47

Opinion delivered May 20, 1963.

[Rehearing denied September 9, 1963.]

*McMath, Leatherman, Woods & Youngdahl* and *John P. Sizemore,* for appellant.

*Mahony & Yocum,* for appellee.

PAUL WARD, Associate Justice. Barney Clemons (either as an employee or as an independent contractor) was working for the Bearden Lumber Company (hereafter called company) when he suffered a heart attack and later died. His widow and minor children filed a claim for death benefits under the Workmen's Compensation Act. The question of whether Clemons' death resulted from his employment was not presented to the commission and it is not an issue here. The commission (and the circuit court) disallowed the claim on the ground that Clemons was not covered by the act because he was an *independent contractor* and not an *employee* of the lumber company. This appeal challenges the substantiality of the evidence to support the findings of the commission.

The Bearden Lumber Company is a lumber manufacturing concern. In the course of providing logs from the forest to keep its mill operating, the company employs a number of persons whom it (here) calls "contractors" to cut logs and haul them to the mill. Barney Clemons was one of these "contractors" whose duty it was to haul the logs from the woods to places on the highway or road so they would be accessible to other trucks which would haul them to the mill. It is not disputed that Clemons

had less than five men under his supervision. The testimony tending to show the relationship between Clemons and the company (whether employee or independent contractor) is not materially in dispute. The problem then largely becomes one of determining the legal effect of definitely determined facts. A summary of the testimony pertinent to the indicated issue is set out below.

Mrs. Clemons (the widow) understood her husband worked for the company; he got one check for labor and another for his one truck and a one-half interest of another truck; the company took deductions for social security, etc., from what he earned at $1.00 per hour. They had three children under age. *Waymon Clemons,* twenty-two year old son of deceased, had worked with his father six to eight months; was paid $1.00 per hour by check from the company; his father had worked for the company ten years; Charley Crawford, employee of the company, directed his father's work in these particulars— scaling the logs, saw to it that land was cleaned up good, told where to get logs; told them when they were doing a poor job; his father told him and the two other men (I. J. and John Mays) what to do; the work hours were turned in to the company and they were paid by company checks. *I. J. Mays* worked with the deceased five years and was paid by the hour by company check—took orders directly from deceased. *John Mays'* testimony was the same. *Larkin Clemons,* brother of deceased; they owned three trucks as partners; all men paid same as other company employees; deceased got one check for wages and another one for use of trucks; Crawford was the company supervisor over deceased; he (Crawford) came out on job nearly every day, and gave instructions in detail; when deceased did anything wrong Crawford got after him; the men (including deceased) were paid by company check, and the company held out for social security; the company told us we had to pay men $1.00 per hour—we never paid any more than that—our working agreement was oral.

The only testimony offered by the company to sustain its contention that Clemons was not an employee but

was in fact an independent contractor was that given by its manager, Garland Anthony, Jr. He did not deny any of the testimony given by claimant's witnesses, and none of his own testimony was refuted. This testimony is long and much of it is repetitious, but the essence may be summarized as follows: The contract with deceased was verbal—whereby he was to be paid $8.00 per thousand feet for logs "banked"; they had similar contracts with men other than the deceased; he had no control over deceased, but did direct his operation—such as choosing the banking area; deceased turned in the payroll (for himself and three men under him) after Crawford scaled the logs. According to a typical week (actually shown by company books) 27,468 thousand feet of logs were banked—$219.74 due at $8.00 per thousand feet—deceased and three men received (gross) $28 each or a total of $112—after deductions deceased got a check for $94.69 on the "contract" and $26.11 for salary (at $1.00 per hour)—the other men received $24.36, $27.16, and $26.11 respectively.

The record further reflects that the payroll sheets kept for deceased and the three men under him were just like those for other regular company employees, and that the company had only one insurance carrier to cover its employees and the insurance deductions made from the paychecks (of the deceased and the three men) were the same as deducted from the paychecks of regular millworkers.

In the face of the above (undisputed) testimony the full commission made the following decisive announcement:

"After a careful study of all the evidence of record, we are of the opinion that the Referee's finding is supported by a preponderance of the evidence and should be and is herewith affirmed *because the evidence clearly establishes that the deceased was free to choose the means and methods by which the details of the work was to be performed* and there is no evidence that would indicate that the deceased was not in full agreement with the bookkeeping system employed by the Bearden Lumber Company." (Emphasis added.)

We fully agree that there is substantial evidence to support the commission in finding (a) Clemons had control of the details of his work and (b) he had no fault with the manner in which the company kept its books. Even so, those findings, in our opinion, fall far short of proving (by substantial evidence) that Clemons was an independent contractor.

For convenience, we first dispose of finding (b). Certainly and without doubt no employee of a large corporation would be expected to object to its "book-keeping system". So, we say, that finding in no way proves Clemons was an independent contractor, and that it was not substantial evidence of such fact.

(a) Let us, then, examine the finding that Clemons was "free to choose the means and methods by which the details of his work was to be performed". The only "details" connected with Clemons' job that the company did not control were insignificant things such as would normally be left to any employee.

Most important, we think, is the fact that it is not denied the company had the right to discharge Clemons at any time. This is most persuasive that the company really had effective control over every detail of Clemons' activities. In the case of *Irvan* v. *Bounds*, 205 Ark. 752, 170 S. W. 2d 674, in considering this same question of control, we quote with approval this statement:

"By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor."
Further on in the same opinion we again quoted as follows:

" ' "The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists. While it is not the sole test, it is the best test upon the question of control." ' "

Also, it is undisputed that the company instructed Clemons to pay his men (and himself) $1.00 per hour. Realizing this was a strong implication that Clemons (and his men) were employees, the company attempts to explain away the implication by showing it was only a matter of bookkeeping and was only a precautionary measure. The same situation arose in the cited case where Irvan was contending Bounds was an independent contractor, but we had to see to it that Bounds was paid in compliance with the Wage-Hour Law. The Court, however, said:

"A reasonable interpretation of this statement is that Irvan was complying with the Federal Wage-Hour Law as to the pay of these men, and it indicates that Irvan considered Bounds to be an employee, because, if Bounds was an independent contractor, and not an employee, it was not necessary, in order to comply with the federal law, to guarantee him any minimum wage."

In reaching the conclusion that the record fails to contain substantial evidence to sustain a finding that Clemons was an independent contractor, we take into consideration not only what we have heretofore said, but we consider as highly significant the following facts and circumstances: (a) We find many facts, heretofore pointed out, to indicate Clemons was an employee; (b) There is really no fact or circumstance shown by the record to indicate Clemons was an independent contractor that is not also consistent with an employee relationship; and, (c) any other conclusion than the one we have reached could result in serious injustices to laboring people whom the law intended to protect. It is in the record that the company has several other "contractors" like Clemons. It is not unreasonable to expect that many of these "contractors" are judgment proof, and they cannot be forced to carry insurance. Therefore, if we permit employers like appellee to escape liability, there will be no way injured employees and (in case of death) their wives and minor children can be protected. Not only so, but, in this case, there appears another injustice or inequity. The company and the insurance carrier are each receiving

part of the laborer's pay each week which they will (apparently) be allowed to keep without any liability to anyone.

The law imposes on us the duty to interpret the Workmen's Compensation Law liberally to the end that injured employees shall be remunerated for loss of earning power. In that spirit, and under the undisputed facts of this case, we are unwilling to say there is substantial evidence to support the finding of the commission and the circuit court.

The finding, therefore, is reversed and the cause is returned to the circuit court with instructions to remand to the commission for further proceedings consistent with this opinion.

HARRIS, C. J., and McFADDIN, J., dissent.

GEORGE ROSE SMITH and ROBINSON, JJ., concur.

CARLETON HARRIS, Chief Justice (dissenting). I will agree that the preponderance of the evidence in this case indicates that Barney Clemons was an employee of the Bearden Lumber Company, but as stated in numerous cases, so numerous as to require no citation of authority, this court is not concerned with the question of which side carries the preponderance—we are only concerned with whether there was *any* substantial evidence to support the finding of the commission.

There are several facts which tend to support the finding that Clemons was an independent contractor. He was paid $8.00 per thousand feet (for log banking), and likewise furnished his own trucks and equipment. The majority refer to testimony by the widow and brother of the deceased to the effect that Clemons received one check (the larger check mentioned in the majority opinion) for use of his equipment. This fact is very much in dispute, and is not supported by any other testimony in the record. To me, from the evidence, it clearly appears that the larger check was based upon the number of feet of log banks. At any rate, the matter was in dispute, and the commission had the right to accept either view. In

*Parker Stave Co.* v. *Hines,* 209 Ark. 438, 190 S. W. 2d 620, this court stated:

"The fact that appellee was paid by the thousand and furnished his own truck tends to indicate that he was an independent contractor. On the other hand, the fact that the employment was to run for no specified time, and the further fact that the stave company could terminate the relation at any time, without liability, are features which indicate that appellee was an employee."

As indicated by that case, the fact that Clemons was paid by the thousand, and furnished his own trucks, are circumstances to indicate that he was an independent contractor. It is not disputed that Clemons had the complete right to hire and discharge the men who worked under him in banking the logs. However, in my opinion, the strongest circumstance indicating that Clemons was an independent contractor is the fact that *all wages, paid to Clemons and his employees, along with Workmen's Compensation deductions on the four men, were charged back to Clemons and deducted from the main check received by him* (based upon the number of feet of log banks). In other words, Clemons' employees were covered for Workmen's Compensation insurance, and *he paid the premium* for this coverage. This is established by the testimony of Garland Anthony, Jr., manager of the Bearden Lumber Company, such testimony, as far as I am able to determine, being undisputed. From the testimony of Anthony:

"He (referring to Clemons) received a payroll check for himself in the amount of $26.11 and a check for Waymon D. Clemons for $24.36, John H. Mays, $27.16, I. J. Mays, $26.11, which was their gross payroll check less their normal deductions. And in addition to that, Barney Clemons was issued a check for the balance of the contract price with the gross payroll deducted and the Workmen's Compensation deducted.

Q. And what did that check represent?

A. It amounted to $94.69.

Q. I know, but what did it represent?

A. The balance of the contract payment for that week."

The majority mention that various deductions were made by the company from the wage checks given to Clemons and his men. Company officers testified that the Bearden Company made the deductions as a convenience to Clemons because he had no bookkeeping facilities, and that the company followed the same procedure with other independent contractors. This strikes me as an entirely reasonable explanation. The fact that Federal Income Tax was withheld, along with deductions for Social Security, Workmen's Compensation Insurance, and group insurance, were only circumstances to consider. In *Smith* v. *West Lake Quarry & Material Co.*, 231 Ark. 294, 329 S. W. 2d 167, we said:

"Appellant insists that the withholding, social security, and unemployment tax matters are, in themselves, conclusive evidence that Smith was an employee of West Lake, and that West Lake is estopped to claim otherwise. Appellant cites these cases to sustain his contention: (here citing cases from other states). A study of these cases convinces us that they do not hold that such tax deductions *conclusively* establish an employer-employee relationship, irrespective of all other evidence. These cases use the fact of tax deductions or insurance payments to corroborate other evidence as to the employer-employee relationship. In short, the tax deductions or the insurance payments are circumstances to be considered along with all the other circumstances in the case in looking at the relationship."

In the same connection, the opinion cites from other Arkansas cases as follows:

"In *Ozan Lbr. Co.* v. *McNeely*, 214 Ark. 657, 217 S. W. 2d 341, we said that the payment of workmen's compensation insurance on the worker would be 'relevant as a circumstance' in determining whether the relationship was employee or independent contractor. In *Farrell-Cooper Lbr. Co.* v. *Mason*, 216 Ark. 797, 227 S. W. 2d 445, we said: 'Evidence that an employer pays work-

men's compensation or liability insurance on a workman is a *circumstance to be considered in determining whether said workman is an employee* and thus subject to the employer's right and power to control.' (Emphasis supplied.) All the authorities that we have been able to find support the statement contained in Larson on Workmen's Compensation Law, § 46.40, that such tax deductions and/or insurance payments are 'a factor to be given weight,' but are not determinative or conclusive on the issue. To the same effect, see 99 C.J.S. p. 351, 'Workmen's Compensation' § 104.

''The Commission found that the withholding and the tax payments were satisfactorily explained in the case at bar, and we cannot say that there is an absence of substantial evidence to support such finding. With the withholding and the tax payments as only 'circumstances to be considered,' it is clear that a fact question was made as to whether Smith was an independent contractor or an employee; and the Commission's decision on that fact question has ample evidence to sustain it within the purview of our cases, some of which are: *Parker Stave Co.* v. *Hines,* 209 Ark. 438, 190 S. W. 2d 620; *Wren* v. *D. F. Jones Const. Co.,* 210 Ark. 40, 194 S. W. 2d 896; *Farrell-Cooper Lbr. Co.* v. *Mason,* 216 Ark. 797, 227 S. W. 2d 445; and *Massey* v. *Poteau Trucking Co.,* 221 Ark. 589, 254 S. W. 2d 959.''

The majority emphasize the fact that the company had the authority to discharge Clemons at any time it desired. The opinion also states, ''The only 'details' connected with Clemons' job that the company did not control were insignificant things such as would normally be left to any employee.'' With reference to the right to discharge, let us take note of what this court said in *Ozan Lumber Co.* v. *Garner,* 208 Ark. 645, 187 S. W. 2d 181.

''While it is true that it appears that appellant company reserved the right to discharge appellee and that this is evidence in support of appellee's contention that he was an employee and not an independent contractor, *we have many times held that this right to dis-*

646

*charge is not controlling and is not the sole test.*[1a] The rule announced by this court, and since followed in subsequent decisions, in determining whether a workman occupies the status of an employee or that of an independent contractor, is clearly stated in *Moore and Chicago Mill & Lumber Co.* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722, in Headnote 3. 'If there is nothing in the contract showing an intent upon the part of the employer to retain control or direction of the means or methods by which the party claiming to be independent shall perform the work, and no direction relating to the physical conduct of the contractor or his employees in the execution of the work, the relation of independent contractor is created. *The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists.'* "[1b]

Certainly, there is substantial evidence in this record that the manner in which the work was to be performed was entirely in the hands of Clemons.

The men were hired by Clemons; he had the sole right to fire them; his was the sole responsibility of determining how many men he needed for the job; he fixed the pay (except that he must pay a minimum of $1.00 per hour), and the hours each man would work. He had full responsibility in determining the manner in which the work would be carried out. I do not suppose that the company cared whether it was done by truck, or by horse and wagon—so long as the job was completed. The only "control" by the company that I can find in the record relates to the fact that the company woods foreman, Charlie Crawford, would tell Clemons where to bank the logs,[2] and would advise whether the company needed logs for the week, or did not need them. I see nothing incom-

---

[1a] and [b]  Emphasis supplied.
[2] The logs were banked in a location where they could be loaded on the trucks in any kind of weather and hauled to their destination.

patible between these actions and Clemons' status as an independent contractor. If I enter into an agreement with a contractor to haul dirt to build up my yard, I certainly will tell him where to place the dirt—but this does not make the dirt hauler my employee. Nor do I feel that the company should be expected to take a lot of logs that it could not handle. In fact, this could well be a reason for hiring an independent contractor to do this work, *i.e.*, the company would not have to pay out wages during a period of time when it had sufficient logs on hand, or during a period of inclement weather when the logs could not be hauled from the woods.

Summarizing, evidence for appellants shows that the company made deductions for Federal Income Tax, Social Security, group insurance, and Workmen's Compensation Insurance. These facts, according to the authorities, herein cited, were circumstances tending to show that Clemons was an employee, along with the fact that the company could terminate its arrangement with him at any time. On the other hand, the following facts support the inference that Clemons was an independent contractor:

First, he used his own equipment;

Second, he had full charge of hiring and firing his employees;

Third, the manner of accomplishing the work was entirely in the hands of Clemons; and,

Fourth, *all wages paid to Clemons and his employees, along with the Workmen's Compensation coverage, was charged to Clemons and the total amount deducted from the check given him (based on the contract of $8.00 per thousand).*

In other words, *he* paid the wages and the Workmen's Compensation coverage.

I am unable to say that these facts do not constitute evidence of a substantial nature supporting the finding of the commission.

I, therefore, respectfully dissent.

I am authorized to state that Mr. Justice McFADDIN joins in this dissent.

GEORGE ROSE SMITH, J. (concurring). I concur in the result reached by the majority opinion, but it does seem to me that the position now being taken cannot be reconciled with the views that were expressed in a number of our prior decisions. Judging by similar situations in the past, we can foresee that there will be constant pressure upon the court to broaden the scope of today's holding, until what will actually be a new conception of the independent contractor relationship has finally been spelled out by the cases. It seems safe to suppose that it will be several years before the full effect of today's decision can be accurately determined.