**EAGLE STAR INSURANCE COMPANY, Ltd., Plaintiff,**

**v.**

**Jo C. DEAL, Executrix of the Estate of Phil L. Deal, Deceased, et al., Defendants.**

**No. F-71-C-13.**

United States District Court, W. D. Arkansas, Fayetteville Division.

Feb. 1, 1972.

Supplemental Opinion Feb. 8, 1972.

E. C. Gilbreath of Jones, Gilbreath & Jones, Ft. Smith, Ark., for plaintiff.

James W. Gallman of Ball & Gallman, Fayetteville, Ark., for Mrs. Deal.

R. H. Mills, Springdale, Ark., for Gary R. Hungate & G. Bowerman.

James E. Evans, Springdale, Ark., for Maxine Hill.

H. Franklin Waters of Crouch, Blair, Cypert & Waters, Springdale, Ark., for Betty Roark.

W. W. Bassett of Putman, Davis & Bassett, Fayetteville, Ark., for Miles O. Letsch.

Wright, Lindsey & Jennings, Little Rock, Ark., for Lumbermen's Mut. Cas. Co.

## OPINION

JOHN E. MILLER, Senior District Judge.

On April 9, 1971, the plaintiff, Eagle Star Insurance Company, Ltd., filed its complaint against the defendants named above, seeking judgment of this court declaring the rights, duties, and other legal relations between it and the named defendants, under and pursuant to 28 U.S.C.A. § 2201 et seq.; and that the court declare, decree and hold that the plaintiff has no duty to defend any lawsuit that might be filed by the personal representatives of Janet Mize, Mrs. Mary S. Hungate, Mrs. Shirley Lucille Roark, Donna Colleen Letsch and Janet Gay Bowerman, and no duty to pay any judgment which may be entered in favor of the representatives of said decedents against the Estate of Phil L. Deal, deceased; and that the court should declare, order and decree that there is no liability coverage under the policy issued by plaintiff with reference to any claims for injury, death, mental anguish, or any other rights, claims or causes of action, that anyone might be entitled to as a result of the death of the said persons.

That the plaintiff is an English insurance company, duly authorized to do business in the State of Arkansas; that defendants are citizens of Arkansas and residents of the Western District thereof, and the amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

The plaintiff alleged that on or about June 26, 1970, it issued and delivered its aircraft insurance policy No. ES–47468 for a term of one year from June 26, 1970, to June 26, 1971, to Phil L. Deal, covering a certain 1969 Beechcraft Bonanza; that on March 6, 1971, the said Phil L. Deal was traveling from Fayetteville, Arkansas, to Harrison, Arkansas, to "take care of patients who had appointments scheduled in Harrison on

said date"; that the said Phil L. Deal took with him five women heretofore named, and that as the said Phil L. Deal, pilot of the airplane, was making his approach to land said aircraft at Harrison Municipal Airport, the aircraft crashed, killing Dr. Deal and all five of the persons heretofore named.

That the above described policy provided under "EXCLUSIONS":

"This policy does not apply:

"4. under Coverages A, B or D to bodily injury to, sickness, disease or death of any employee of the insured while engaged in the duties of his employment or to any obligation for which the Insured or any Company as his Insuror may be held liable under any Workmen's Compensation Law."

The plaintiff further alleged that the defendant, Lumbermen's Mutual Casualty Company, had issued its workmen's compensation policy to Dr. Deal, that the deceased persons were killed while in the course and scope of their employment, and that the workmen's compensation carrier would be liable for workmen's compensation under the laws of the State of Arkansas, and that there is no coverage under the policy issued by the plaintiff with reference to any claims by the personal representatives of the estates of the deceased.

That under Item 6 of the policy, coverage is only provided under paragraph (a) for "Pleasure and Business," which does not include the transportation of employees.

That if the court determines and holds that the deceased were employees of some other person or corporation other than Phil L. Deal at the time of their deaths, then the plaintiff alleges that the said Deal or if such other person or corporation does exist were and are included under the definition of "Insured" under paragraph III of the policy, that there would be no coverage with reference to any claims of the representatives of the estates of the five deceased persons for the reason that the deceased were "employees of Phil L. Deal or such other person or organization legally responsible for the use of the aircraft."

That demands have been made upon the Estate of Phil L. Deal by the representatives of the estates of the decedents with reference to liability claims on behalf of said deceased, and a demand has been made upon plaintiff by defendant Mrs. Jo C. Deal, Executrix, to provide a defense with reference to said claims and to pay any judgment that might be obtained by the representatives of the deceased against the Estate of Phil L. Deal.

Lumbermen's Mutual Casualty Company filed its answer, to which the Executrix of the Estate of Phil L. Deal filed a reply and a cross-complaint, but on July 13, 1971, the cause was pretried with all parties being represented by their attorneys of record, and the court dismissed all claims and causes asserted against or by defendant Lumbermen's, without prejudice, including the plaintiff's complaint and the cross-claim against Lumbermen's of the Executrix of the Deal Estate.

In paragraph XV of the answer of the Executrix of the Deal Estate to the complaint, she alleged that the decedents "were solely employees of Ozark Lab Company, an Arkansas corporation, wholly owned by Philip L. Deal, and that Philip L. Deal, as president of such corporation, is a third party within the meaning of the Arkansas Workmen's Compensation Act so that the claims for wrongful death derived through their personal representatives are claims not covered by a policy insuring the employee risk of Philip L. Deal for his own employees and, therefore, such Act does not afford an exclusive remedy to such claimants and none of the exclusions asserted by plaintiff, to-wit: Exclusion 4, Item VI, Insured-Paragraph III, or any other part of the policy issued by plaintiff are applicable to defeat coverage for this defendant and this defendant is entitled to be defended by plaintiff against such claims and is entitled to payment

by plaintiff of any judgment that may be rendered against her as executrix of the estate of Philip L. Deal, deceased."

The personal representatives of the deceased filed separate answers, in which they denied each and every material allegation contained in the complaint except that Phil L. Deal was an orthodontist and that on March 6, 1971, was piloting the aircraft covered by plaintiff's insurance policy and was transporting the deceased as passengers when the aircraft crashed.

That the deceased were not employees of Dr. Deal within the meaning and definition of that term as used and defined in the Arkansas Workmen's Compensation Act; that Exclusion 4, appearing in plaintiff's policy is "an ambiguous insurance exclusionary clause * * * and should be strictly construed against the plaintiff insurer so as to afford coverage and allow recovery."

That on March 6, 1971, and prior thereto, Dr. Deal was an executive officer and/or employee of the Arkansas corporation, Ozark Lab, Inc., and as such is and was a third party within the meaning of Arkansas law and all exclusions urged by plaintiff as set forth in the complaint are inapplicable to defeat coverage.

That the purpose of the plaintiff's suit for declaratory judgment is to deprive the defendant of certain benefits of the insurance policy issued by plaintiff in favor of Dr. Deal and pursuant to provisions of Ark.Stat.Ann., § 66-3239, the defendant is entitled to a reasonable attorney's fee and costs of the defense of this action in the event plaintiff is unsuccessful in its suit.

The prayer of each of the answers is that the plaintiff's complaint be dismissed, or in the alternative that this court declare coverage under plaintiff's policy in favor of the Estate of Dr. Deal, and that plaintiff be held liable to pay any judgment or judgments that might be rendered in favor of each defendant against the Estate of Dr. Deal subject to the applicable policy limits,

and that plaintiff be required to defend the Estate of Deal against any action or actions brought or to be brought against the Estate of Deal seeking damages on account of the wrongful death of the deceased, and that the attorney for each of the deceased be allowed a reasonable attorney's fee and their costs.

Prior to August 9, 1971, the representatives of the estates of the deceased passengers filed actions in the Circuit Court of Washington County, Arkansas, against Jo C. Deal, as Executrix of the Estate of Phil L. Deal, alleging negligence on the part of the deceased Phil L. Deal, and praying judgment against the estate for damages.

On November 5, 1971, the plaintiff filed an amendment to the original complaint, in paragraph II of which it alleged that because Phil L. Deal purchased a workmen's compensation policy for his employees, the deceased, that they are now estopped to deny that they were employees of Deal at the time of their deaths. In paragraph III it was alleged that Deal would also be considered an employer under the Arkansas Workmen's Compensation Act, and therefore workmen's compensation would be the exclusive remedy of the estates of the deceased.

The representatives of the deceased filed answers to the amendment to the complaint specifically denying the allegation therein contained, and reasserting their claims against the Estate of Dr. Deal.

On November 16, 1971, Mrs. Deal, as Executrix of the Estate of her deceased husband, filed her answer, in which she denied the allegations of paragraph II of the amendment to the complaint, and specifically pleaded the names and dates of the employment of the deceased by Ozark Lab, Inc.

She also denied the allegations of paragraph III of the amendment to the complaint, and alleged:

" * * * that Phil L. Deal is a third party within the meaning of the Workmen's Compensation Act of Ar-

kansas and that in any event this contention has no relevance to the issues in this suit and no effect on the duty to defend and coverage owed by plaintiff to this defendant."

The case was tried to the court on November 22, 1971, and taken under consideration subject to the submission of briefs of the parties in support of their respective contentions. The briefs have been served and submitted, and the controversy is now ready for decision.

This opinion shall constitute the findings of fact and conclusions of law as authorized by Rule 52, Fed.R.Civ.P.

Jurisdiction is based on diversity of citizenship and the amount in controversy, and the law of Arkansas applies.

At the trial the plaintiff introduced Exhibits 1 through 16 except the document marked Plf. Ex. 7, which was not introduced. The defendant introduced Exhibits 1 through 28 and Exhibits 17 and 18 originally marked for introduction by plaintiff.

Phil L. Deal practiced orthodontics at Fayetteville, Arkansas, from 1961 to 1971, with a branch office at Harrison, Arkansas, during the years 1967–71 and at Mountain Home, Arkansas, during 1970–71. He usually made the trips to the branch offices by automobile or by airplane. He was a licensed pilot and paid the expenses incurred in the operation of the plane.

On June 26, 1970, liability policy No. ES–47468 for a period of one year, or until June 26, 1971, was issued to Dr. Deal. The policy also covered damages to the airplane that was destroyed, which claim has been paid to the Executrix and is not involved herein.

The limits of the liability of coverage of the policy claimed by the deceased are set forth in Item 4 of the policy as follows:

| Limits of Liability | Coverages |
|---|---|
| A – $100,000 each person<br>$300,000 each occurrence | Bodily injury liability including passengers. |
| B – $100,000 each person | Passenger bodily injury liability. |
| C – $100,000 each occurrence | Property damage liability. |

Under "EXCLUSIONS" the policy provides:

"This policy does not apply:

"4. under Coverages A, B or D to bodily injury to, sickness, disease or death of any employee of the insured while engaged in the duties of his employment or to any obligation for which the Insured or any Company as his Insurer may be held liable under any Workmen's Compensation Law."

On May 2, 1968, Dr. Deal purchased from Lumbermen's a workmen's compensation policy for a period of three years, or until May 2, 1971. In the workmen's compensation policy the covered employees are described as: "Clerical Office Employees—N.O.C." No audit had been made on the workmen's compensa-tion coverage since its inception date on May 2, 1968, notwithstanding it was a three-year policy.

Mr. E. J. Ball, a prominent attorney of Fayetteville, Arkansas, had represented Dr. Deal in various legal matters since 1958 until his death. They had discussed the Keogh Plan and/or H.R.

10 plan as a method of providing retirement benefits for Dr. Deal. Other tax shelter plans were discussed, and Dr. Deal was advised by Mr. Ball that if he had no employees of his own, he could set up a retirement plan for himself. The advantage would be that he would not be required to make contributions on other qualifying employees' retirement plans if they were employed by a separate corporation. In July or August of 1968, Mr. Ball, at the request of Dr. Deal, met with several other orthodontists and dentists in a discussion on the organization of a dental laboratory. It was first contemplated that Dr. Deal and the other practitioners in the general area would organize a corporation, but apparently the other practitioners decided not to join in the creation of a new corporation, and after further conference with his attorney Ozark Lab, Inc., was duly organized on November 4, 1968. The charter was received by Mr. Ball for Dr. Deal on November 8, 1968. Dr. Deal was elected president and Mr. Ball secretary of the corporation. Twelve shares of no-par value stock were issued to Dr. Deal and he deposited $300 in the bank account opened in the corporation's name.

The decedent Mary Hungate became a salaried employee of that company. Dr. Deal transferred for a cash consideration to Ozark Lab all the dental supplies he had formerly purchased, and thereafter that company purchased all supplies and maintained an inventory of merchandise for use in its business.

The corporation secured employer identification numbers from the Internal Revenue Service and Arkansas Revenue Department and regularly made tax returns on income as a corporation, withheld and remitted income taxes for employees, made returns to the Employment Security Division for both State and Federal unemployment compensation insurance, and withheld and made returns and paid the employer's contribution for federal insurance compensation (Social Security).

Mr. Ball proceeded to set up some trusts for Dr. Deal, i. e., the Deal children trust, a ten-year and one-day trust, which leased certain items of realty and personal property to Dr. Deal, and the Ben Deal trust, short-term ten year and one-day trust which leased equipment and other personalty to Dr. Deal and Ozark Lab.

Several employees of Dr. Deal, including the decedents, were transferred and became employees of Ozark Lab. The records of Ozark Lab establish the dates of employment as follows:

" * * * that Mary S. Hungate was an employee of Ozark Lab, Inc. from November 1969 through March 6, 1971, that Shirley L. Roark was an employee of Ozark Lab, Inc., from August 1970 through March 6, 1971, and never an employee of Phil L. Deal; that Janet Mize was an employee of Ozark Lab, Inc., from April 1, 1970 through March 6, 1971; that Donna Colleen Letsch was an employee of Ozark Lab, Inc., from February 14, 1971, through March 6, 1971, and never an employee of Phil L. Deal; and that Janet Gay Bowerman was an employee of Ozark Lab, Inc., from February 14, 1971, through March 6, 1971, and never an employee of Phil L. Deal * * *."

Mrs. Hazel Deal, the mother of Dr. Deal, was the bookkeeper, and kept excellent records of Ozark Lab and also of the various endeavors of Dr. Deal. She prepared the W-2 forms for Ozark Lab, which included all of the employees except the two employees of Dr. Deal, Mary Clark and Mary Hungate, and their W-2 forms were prepared showing Dr. Deal as their employer.

No attack was made upon these exhibits so that on the date of the tragedy, March 6, 1971, all of the deceased were carried on the records as employees of Ozark Lab.

An examination of defendants' Exhibit 13, designated "Ledger," establishes that Dr. Deal, in his practice of ortho-

dontics, purchased and received every month from Ozark Lab all the supplies and necessities for his practice, ranging in amounts from $522.41 for the month of April 1969 to $2,713.60 for the month of February, 1971, which does not include the salaries of the employees of Ozark Lab. In February 1971 the salaries amounted to $2,584.98, of which Mary Hungate received $700.00, Janet Mize $400.00, Shirley Roark $400.00, Donna Colleen Letsch $98.40, and Janet Gay Bowerman $56.80. In doing this, Dr. Deal was merely carrying out the plans he had adopted after conferences with Mr. Ball which led up to the organization of Ozark Lab.

In the discovery proceedings the plaintiff propounded to Mrs. Jo C. Deal interrogatory No. 25 (Plf. Ex. 9):

"Q. What was the purpose of the incorporation of Ozark Lab, Inc.?

A. To furnish lab services generally to dentists, including Phil L. Deal, and to furnish lab and services to Phil L. Deal in his practice with the payment for those items furnished based upon the materials used by Deal. It also furnished space and equipment to Deal for his practice."

Plaintiff also submitted to the defendants, which were responded to by Mrs. Jo C. Deal, a request for admissions. In reference to the policy of workmen's compensation, Requests Nos. 17, 18 and 19 were as follows (Plf. Ex. 10):

"That Janet Mize, Mary S. Hungate, Shirley Louise Roark, Donna Colleen Letsch, and Janet Gay Bowerman were employees of Phil L. Deal on March 6, 1971.

A. Denied. The persons mentioned were employees of Ozark Lab, Inc.

"That Janet Mize, Mary S. Hungate, Shirley Louise Roark, Donna Colleen Letsch and Janet Gay Bowerman were engaged in the duties of their employment at the time of the accident in this case on March 6, 1971.

A. Denied. The persons mentioned were in a travel status and presumably were merely sitting there as passengers in the aircraft.

"That Janet Mize, Mary S. Hungate, Shirley Louise Roark, Donna Colleen Letsch and Janet Gay Bowerman were being paid their regular salary or compensation when en route from Fayetteville to Harrison at the time of the accident in this case on March 6, 1971.

A. Denied. Ozark Lab, Inc., made no payment of wages, or salary after the crash although had the accident not occurred the Ozark Lab, Inc., would have paid the regular wages and salaries to those aboard the aircraft without any additional pay for such travel or any deduction by reason thereof."

Mr. Jim Sandlin, a CPA with Douglas Walker Co. of Fayetteville, Ark., was thoroughly familiar with the business affairs of Dr. Deal and Ozark Lab, Inc. He testified without contradiction that the records showed that the services of Ozark Lab were also used by approximately 10 other orthodontists or dentists in the general area. Defendants' Exhibits 2 and 3 are corporate tax returns and reflect the different employer identification numbers and the returns filed by Ozark Lab. They also reflect the separate returns filed by Dr. Deal on his two employees. Separate payroll records, W–2 forms, and other records and books were kept on Phil L. Deal, D.D.S., and Ozark Lab, Inc., and reflect completely separate assets and liabilities.

Dr. Deal never drew any salary from Ozark Lab.

When Ozark Lab was incorporated, a separate bank account was established by it, and all purchases, remittances and salaries of the deceased were paid by checks drawn on the account. Mary S. Hungate was the office manager and secretary-treasurer of Ozark Lab. She signed all checks drawn on the account, and had supervision over the employees of Ozark Lab.

Dr. Deal had no employees at Harrison or Mountain Home, but Ozark Lab had a part-time employee who worked in the Harrison office only.

Were the decedents at the time of their death employees of Dr. Deal? The plaintiff in its brief cites several cases which refer to workmen's compensation applications and interpretation of the workmen's compensation law. These cases are not relevant to the consideration before this court on the question of whose employees decedents were at the time of the plane crash.

The plaintiff contends that the decedents were employees of Dr. Deal at the time his plane crashed with decedents aboard en route to Harrison, Ark., where Dr. Deal was to treat patients. The plaintiff cites many cases referring to control of the employee, the right of the employer to terminate employee's services, and the nature of the work as to supervision by the employer. Irvan v. Bounds (1943) 205 Ark. 752, 170 S.W.2d 674; Clemons v. Bearden Lbr. Co. (1963) 236 Ark. 636, 370 S.W. 2d 47. Although these cases refer to the employer-employee relationship in a context other than that of workmen's compensation proceedings, neither of these cases sheds any light on the instant case. Dr. Deal had organized a corporation under the Arkansas Business Corporation Act, Ark.Stat.Ann., § 64–101 et seq., Ozark Lab, Inc. Ozark Lab, Inc., in the prosecution of its business furnished not only supplies and equipment as found by the court, but such of its employees as were needed to handle and adjust the supplies used by Dr. Deal in the private practice of his profession.

■■ The status of employment is a question of fact. In Walker v. Countryside Cas. Co. (1965) 239 Ark. 1085 at 1092, 396 S.W.2d 824, at 829, the court held:

"We, however, are of the view that the question of whether Walker was an employee is a question of fact, rather than a question of law, and we are therefore only concerned with

whether there was substantial evidence to support the findings of the trial court, sitting as a jury."

From the evidence before the court it is clear that Ozark Lab functioned in a lawful manner, and plaintiff has not met the burden of proof necessary to pierce the corporate veil. "It is only when the privilege of transacting business in the corporate form has been illegally abused to the injury of a third person that corporate entities should be disregarded." Rounds & Porter Lbr. Co. v. Burns (1949) 216 Ark. 288, 225 S.W.2d 1. Also, see Plant v. Cameron Feed Mills (1958) 228 Ark. 607, 309 S.W.2d 312. The plaintiff argues that the corporate entity should be disregarded. However, it cites no authority within the Arkansas Corporation Act for doing so.

■■ Under the facts established by the evidence and as found by the court, decedents were employees of Ozark Lab at the time of their deaths. Exclusion 4 reads: "This policy does not apply * * * to * * * death of any *employee of the insured* while engaged in the duties of his employment * * *." Since the decedents were not employees of the insured, it is not necessary for the court to determine whether or not they were "engaged in the duties of his employment." Even if the court had found that the decedents were employees of Dr. Deal at the time of their death, they were not engaged in "the duties of his employment." There are several cases in which the court has interpreted an exclusionary clause similar to this portion of the exclusion in the policy, and the courts have held that the term "engaged in the duties of his employment," or similar words, requires more than the passive act of accepting transportation afforded gratuitously by the employer. Preferred Accident Ins. Co. of N. Y. v. Noe (1950) 314 Ky. 245, 234 S.W.2d 748; B & H Passmore Metal & Roofing Co., Inc. v. New Amsterdam Cas. Co. (10 Cir. 1945) 147 F.2d 536; Commercial Cas. Ins. Co. v. Cherry (1935) 190 Ark. 422, 79 S.W.2d 270. See, also, Bryan v.

Aetna Cas. & Surety Co. (8 Cir. 1967) 381 F.2d 872.

The plaintiff vigorously contends that under the latter portion of Exclusion 4, which provides that the policy does not apply "to any obligation for which the insured or any company as his insurer may be liable under any workmen's compensation law," the decedents are entitled to workmen's compensation benefits under the Arkansas law.

Ark.Stat.Ann., § 81–1304 (1960 Repl.), provides that the rights and remedies granted subject to the provisions of the Workmen's Compensation Act, (§§ 81–1301 to 81–1349) on account of injury or death shall be exclusive of all other rights and remedies of such employee, his legal representatives, dependents or next of kin, or anyone otherwise entitled to recover damages from such injury or death, "except that if an employer fails to secure the payment of compensation, as required by the act, an injured employee, or his legal representative, in case death results from the injury, may, at his option, elect to claim compensation under this act or to maintain a legal action in court for damages on account of such injury or death."

Section 81–1305 provides:

"Every employer shall secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury * * *. The primary obligation to pay compensation is upon the employer and the procurement of a policy of insurance by an employer to cover the obligation in respect to this act shall not relieve him of such obligation."

Other sections of the Act clearly contemplate that the injured person or, in the event of death of such person, his representative shall file a claim for compensation payable under the terms of the Act. Section 81–1323 provides that the Workmen's Compensation Commission shall notify the employer and any other interested person of the filing of such claim. An investigation shall be conducted and hearing . held, and the Commission shall determine the facts and the applicable law.

Section 81–1325 provides that the award or order of the Commission shall become final unless either party to the dispute shall, within thirty days from the receipt . by him of the order or award, petition in writing for an appeal to the circuit court of the county in which the accident occurred.

Section 81–1340 provides:

"(1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action."

This court does not have jurisdiction to determine whether a person is entitled to workmen's compensation. This is a matter solely within the jurisdiction of the Workmen's Compensation Commission when a claim has been filed. Upon the filing of a claim, the first jurisdictional fact that must be established is that the claimant or decedent was in fact and in law an employee of the person against whom the claim is asserted. As a matter of fact, Dr. Deal had no workmen's compensation that covered any of the decedents. The undisputed facts show when these decedents became employees of Ozark Lab. Three of the decedents, Shirley Roark, Donna Colleen Letsch and Janet Gay Bowerman, were never employed by Dr. Deal even before Ozark Lab was organized. They only become employees of Ozark Lab after its organization.

Plaintiff argues that the decedents were the statutory employees of Dr. Deal under the case of Neal v. Oliver (1969) 246 Ark. 377, 438 S.W.2d 313. In this case the Arkansas Supreme

Court held that a majority stockholder of a family corporation could not be sued as a third party defendant under the Arkansas Workmen's Compensation Statute, Ark.Stat.Ann. § 81–1301 et seq., when an employee of the corporation was injured by a piece of defective equipment for the reason that the stockholder was the employer of the claimant. The plaintiff argues that the holding in that case applies to the instant case, and that Dr. Deal, as sole owner of the corporation was the employer of the decedents. The defendants argue that such a holding by this court would disregard the corporate entity of Ozark Lab. *Neal* is distinguishable from the instant case in several ways. The stockholder was not involved directly in the injury received by the claimant. The claimant was injured by operating a piece of machinery which she alleged to be in an unsafe condition. Here, Dr. Deal was piloting the airplane which crashed and resulted in the death of decedents, and their personal representatives have filed actions against the Deal Estate alleging negligence on the part of Dr. Deal. There is a vigorous dissent in *Neal* which points out that the majority disregarded the court's holding in Brook's, Inc. v. Claywell (1949) 215 Ark. 913, 224 S.W.2d 37. This court is of the opinion that the doctrine of *Neal* does not apply to Ozark Lab and the Estate of Dr. Deal.

Plaintiff argues that under Ark.Stat.Ann. § 81–1306, which is a part of the Workmen's Compensation Act, that Dr. Deal is liable to the decedents as a "contractor" with Ozark Lab being characterized as an independent subcontractor. As previously stated, the court does not feel that a direct interpretation of the Workmen's Compensation statute is necessary to determine the issues in this case. The plaintiff cites the cases of Brothers v. Dierks Lumber & Coal Company (1950) 217 Ark. 632, 232 S.W. 2d 646, and Huffstettler v. Lion Oil Co. (W.D.Ark.1953) 110 F.Supp. 222, in its argument that Dr. Deal, in rendering professional orthodontic treatment to his patients, subcontracted any work to the

employees of Ozark Lab. There has been no showing by the plaintiff that the employees of Ozark Lab did any orthodontic work. This court has previously decided this question in Huffstettler v. Lion Oil Co., supra. At page 230 the court set out the test for determining whether a "contractor relationship" exists:

"We do not hold that a mere contract for sale of goods makes either the buyer or seller, or both, a 'contractor' within the meaning of section 6, but we are committed to the view that when a contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, the party is a 'contractor' within the meaning of the section." Citing Brothers v. Dierks Lbr. & Coal Co., 217 Ark. 632, p. 638, 232 S.W.2d 646, p. 650.

The fact that Ozark Lab manufactured supplies and necessities for the practice of orthodontics which were sold at arm's length to Dr. Deal along with other orthodontists and dentists is not sufficient to make the relationship of Dr. Deal to the employees of Ozark Lab that of contractor-subcontractor.

The plaintiff argues that the fact that Dr. Deal purchased a workmen's compensation policy in 1968 covering clerical employees estops the defendants from denying that the decedents are employees of Dr. Deal. The plaintiff disregards the fact that this was prior to the formation of Ozark Lab, and that at the time Dr. Deal took out this workmen's compensation policy, the laboratory technicians, chair assistants, etc., were his employees. The fact that Dr. Deal did not inform his insurance agent of the formation of Ozark Lab and the transfer of his employees to that company is not sufficient to estop the defendants from denying that the decedents were employees of Dr. Deal at the time of the accident. Plaintiff cites the case of Stillman v. Jim Walter Corp. (1963) 236 Ark. 808, 368 S.W.2d 270, which involved a contractor-subcontractor relationship whereby the contractor

agreed to furnish workmen's compensation coverage for the employees of the subcontractor for a fixed fee which was exacted from monies due the subcontractor by the contractor. This is not the situation before the court in the instant case at all, as no contract was entered into between Dr. Deal and Ozark Lab to furnish workmen's compensation. Plaintiff also cites Hobbs-Western Co. v. Craig (1946) 209 Ark. 630, 192 S.W.2d 116, where an oral contract between the contractor and subcontractor existed, but no proof has been offered by plaintiff in the present case of any oral contract between Dr. Deal and Ozark Lab with the exception of an elaborate script set out by plaintiff in its brief which has no factual basis.

The plaintiff argues in its brief that if the decedents' personal representatives had applied for workmen's compensation benefits, that such benefits would have been allowed under the liberal construction of the Workmen's Compensation Act, citing the cases of Elm Springs Canning Co. v. Sullins (1944) 207 Ark. 257, 180 S.W.2d 113; Hunter v. Summerville (1943) 205 Ark. 463, 169 S.W.2d 579; Williams Mfg. Co. v. Walker (1943) 206 Ark. 392, 175 S.W.2d 380; Parrish Esso Service Center v. Adams (1964) 237 Ark. 560, 374 S.W.2d 468. These cases involve the determination of workmen's compensation benefits after application has been made, and as plaintiff points out in its brief no application has been made by the representatives of decedents' estates. A case more in point is that of Martin v. Lavender Radio & Supply (1957) 228 Ark. 85, 305 S.W.2d 845, where a claimant who was awarded compensation under the workmen's compensation law was trying to establish that his injuries were not received during the course of his employment. In that case the court found that the claimant was not entitled to benefits under the workmen's compensation law and that he could recover under an accidental injury policy without having to subject the benefits to subrogation under the Workmen's Compensation Act. The

attitude of the Arkansas Supreme Court is different in cases where the only means of recovery for a party is under the Workmen's Compensation Act and in cases where other more sufficient insurance coverage is available.

In its reply brief plaintiff relies upon the case of Johnson v. Aetna Cas. & Sur. Co. (5 Cir. 1939) 104 F.2d 22, as standing for the principle "that even though a common-law liability could be elected, the policy still, by its terms, did not apply because said employees may be entitled to workmen's compensation benefits," said policy having an almost identical employee exclusion as plaintiff's. The Johnson case is not in point in the present case for the reason that the employer in the Johnson case provided transportation for his employees, while in the present case Dr. Deal provided optional transportation for the employees of Ozark Lab, not his own employees.

The last contention of the plaintiff in its brief is that Dr. Deal's use of his airplane in transporting the decedents was an "improper use under the terms of his insurance policy."

On the application filled out by Dr. Deal for said insurance policy, Dr. Deal checked Item 6(a), "Business and Pleasure." Plaintiff contends that Dr. Deal should have checked Item 6(b), which, by definition, includes the regular transporting of employees. Plaintiff also refers to the testimony of Mr. Jim Sandlin, in which Mr. Sandlin stated that he wrote a letter to the IRS in an effort to justify the expense of Dr. Deal's airplane as a tax deduction and referred to the fact that Dr. Deal regularly carried his staff to Harrison and Mountain Home in the airplane.

The defendants argue that any exclusion should be strictly construed against an insurer and the exclusion in Section 6(a) of the policy does not prohibit the transporting of employees.

Section 6(a) reads as follows:

"(a) Pleasure and Business.

"The term 'pleasure and business' is defined as personal and pleasure use and use in direct connection with the insured's business, excluding any operation for which a charge is made and excluding any operation of the aircraft by a student pilot;"

All the court need say to this is that Dr. Deal, a licensed pilot, was using his plane in direct connection with his business, the practice of orthodontics. His passengers were employees of Ozark Lab and not paying any charge for the operation of said plane. The only logical conclusion is that Dr. Deal was using the plane exactly as he stated he would be when he applied for the policy.

In conclusion, the court holds that the decedents were employees of Ozark Lab, Inc., at the time of the plane crash, and that in view of the evidence before the court the decedents are not entitled to workmen's compensation benefits from Dr. Deal or any company as his insurer. This is not to say that the decedents would be denied workmen's compensation benefits if they applied to the Workmen's Compensation Commission as provided in Ark.Stat.Ann. § 81–1318. This court has no jurisdiction to determine whether or not the decedents have a proper workmen's compensation claim. Shultz v. Lion Oil Co. (W.D.Ark.1952) 106 F.Supp. 119.

The use of the aircraft under the provision "Pleasure and Business" permitted the use to which Dr. Deal was utilizing the aircraft at the time of the accident.

For the reasons hereinbefore stated, judgment is being entered today requiring the plaintiff to defend the suits in the Washington County Circuit Court filed by the personal representatives of the decedents and to pay any judgments rendered within the policy limits against the Estate of Dr. Phil L. Deal in favor of the personal representatives of the decedents; dismissing the complaint of plaintiff and amendments thereto; and adjudging costs against the plaintiff.

## SUPPLEMENTAL OPINION

On February 4, 1972, the defendant Jo C. Deal, Executrix of the Estate of Phil L. Deal, deceased, filed her timely motion to open the judgment herein, make additional findings of fact, and amend the judgment by awarding to her the sum of $10,000 as a reasonable attorney's fee for the defense of this action.

On the same day the motion was filed the plaintiff, Eagle Star Insurance Company, Ltd., filed its response, in which it alleged that the problems which brought about the reason for the declaratory judgment action were all created solely by Phil L. Deal; which problems were substantial and created bona fide issues as to whether or not there was coverage under the policy issued by plaintiff. The plaintiff further stated that the statute under which the defendant Jo C. Deal is seeking attorney's fee is highly penal and should be strictly construed.

The opinion filed herein on February 1, 1972, contained a full discussion of all the facts and applicable law involved in this case except that the court omitted to consider the application of the defendant Jo C. Deal set forth in her answer and counterclaim for the allowance of an attorney's fee, and did not award the defendant Jo C. Deal an attorney's fee in the judgment entered herein on February 1, 1972.

Ark.Stat.Ann. §§ 66–3239 (1966 Repl.), provides:

" * * * in a suit for a declaratory judgment under such policy or in a suit by the holder of such policy to require such company to reinstate such policy, such company shall also be liable to pay the holder of such policy all reasonable attorneys' fees for the defense or prosecution of said suit, as the case may be, which fees shall be based on the face amount of the policy involved; said attorneys' fees to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected

as other costs are, or may be by law collected."

■ Under the statute and the facts as set forth in the opinion, the defendant Jo C. Deal is clearly entitled to an award of a reasonable attorney's fee in the defense of the action.

In Maryland Cas. Co. v. Turner (1962) 235 Ark. 718, at page 723, 361 S.W.2d 646, at page 649, the court discussed the question, and held:

"Attorneys' fees in these types of cases are specifically provided for in the statute and should have been allowed by the trial court."

In Aetna Cas. and Surety Co. v. Stover (8 Cir. 1964) 327 F.2d 288, the court at page 291 said:

"When an insurance company claims that it is not liable on its policy because of some exception or exclusion with respect to coverage, the burden is on the insurance company to prove facts that bring it within the exception or exclusion. Riverside Insurance Company of America v. McGlothin, 231 Ark. 764, 332 S.W.2d 486. Aetna has failed to meet this burden."

In Broyles v. Commercial Union Ins. Co. of New York (W.D.Ark.1968) 287 F.Supp. 942, the court, beginning at page 952, considered the question involved herein, and at page 953 said:

"The statute sets forth a guideline which it is the duty of the court to consider, along with all other facts and circumstances. Following the provision in the statute which provides that the insurance company in a declaratory judgment suit shall also be liable to pay the holder of such policy all reasonable fees for the defense or prosecution of the said suit, the following appears, 'which fees shall be based on the face amount of the policy involved.' The limit of liability under the policy to each person is $100,000 for bodily injury; $5,000 for property damage; and $5,000 for medical payments.

"The amount sued for by the Co-Administrators of the deceased, Robert E. Bell, a minor, was $103,500.00.

"Upon such consideration of all the facts and circumstances and the applicable law, the court feels that a reasonable fee for their services in this case covering the period from November 4, 1966, to August 10, 1967, is $2,500.00."

During the trial of the case neither the plaintiff nor the defendant offered or introduced any testimony to establish the amount of the attorney's fee that should be allowed, but notwithstanding the fact that there was no testimony introduced by either side as to the amount of the fee that should be awarded, the court in Curran v. Security Ins. Co. (W.D.Ark.1961) 195 F.Supp. 562, proceeded to determine the amount of the fee based upon the record before it. In the instant case the defendant Jo C. Deal is entitled to recover the amount of a reasonable attorney's fee in accordance with the opinion in Curran, supra.

In John Hancock Mutual Life Ins. Co. v. Magers, 1939, 199 Ark. 104, at page 114, 132 S.W.2d 841, at page 846, the court held that a reasonable fee is to be determined by the particular circumstances that appear in the case, and stated:

"It should not only be commensurate with time and amount of work required but also with the ability present and necessary to take care of or meet the issues that arise. The fee is not fixed for, nor by the attorney, but for the insured and by the court. To be reasonable, it should not be so small or low, that well prepared attorneys would avoid that class of litigation or fail in the employment of sufficient time for thorough preparation, but should be for the purpose of compensating the insured in engaging counsel thoroughly competent to protect his interests."

On April 9, 1971, the plaintiff filed its complaint not only against Jo C.

Deal, Executrix of the Estate of Phil L. Deal, deceased, but also against the personal representatives of the five women who were killed in the crash of the airplane being piloted by Dr. Deal. Also, plaintiff made Lumbermen's Mutual Casualty Company a party defendant but the court later dismissed the complaint against Lumbermen's Mutual for the reason set forth in the opinion heretofore filed, and while the personal representatives of the deceased women were not necessary parties, the court permitted them to remain as defendants although a suggestion was made by the court that the complaint should be dismissed as against them.

The prayer of the complaint was for a declaration of the rights, duties and other legal relations between the plaintiff and the defendants herein, and that in said judgment this court should declare, decree and hold that the plaintiff has no duty to defend any lawsuit that might be filed by the personal representatives of the deceased women and no duty to pay any judgment which may be entered in favor of the representatives of said decedents against the Estate of Phil L. Deal, deceased.

The provisions of the liability policy issued by plaintiff to Phil L. Deal have heretofore been set forth in the opinion of February 1, 1972, and will not be repeated here. The personal representatives of the decedents in the individual suits filed by them in the Circuit Court of Washington County are praying for a total of $4,879,178 against Mrs. Deal as Executrix.

It is always difficult to determine the amount of a fee that should be allowed. The defendant Deal has asked for an allowance of $10,000. The plaintiff has made no suggestion as to the amount. The determination of the amount depends largely upon the circumstances of the particular case. The things to be considered are well set forth in Curran, supra, and, after taking all of the facts and circumstances into consideration,

the court is of the opinion that a reasonable attorney's fee for the Executrix Jo C. Deal is $5,000, and the judgment of February 1, 1972, should be amended accordingly.