(No. 13716.—Judgment reversed; award confirmed.)

THE FRANKLIN COAL AND COKE COMPANY, Defendant in Error, vs. THE INDUSTRIAL COMMISSION et al.—(HENRY F. WEAVER, Plaintiff in Error.)

*Opinion filed February 15, 1921.*

1. WORKMEN'S COMPENSATION—*what determines whether workman is an employee or an independent contractor.* The principal consideration in determining whether a workman is an employee or an independent contractor is the right to control the manner of doing the work, and not the actual exercise of that right by interfering with the work.

2. SAME—*definition of an independent contractor.* An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result.

3. SAME—*method of payment does not necessarily determine whether workman is independent contractor.* The fact that payment is to be made by the piece or the job or by the day or hour does not necessarily determine whether a workman is an independent contractor or an employee, where the workman is subject to the control of the employer.

4. SAME—*whether injured workman was an independent contractor or an employee is a question of fact—review.* Whether a workman was at the time of his injury an independent contractor or an employee is a question of fact, and the circuit court should not set aside an award where there is evidence tending to support the finding of the Industrial Commission that the workman was an employee, which was the only question in controversy.

5. SAME—*when finding that injured workman was an employee is not without basis.* A finding that a workman injured while helping another workman build pit-cars for a mining company was an employee of such company is not without basis where the evidence shows that both workmen were regular employees of the company; that they built the cars when not doing other work for the company; that the cars were built on the company's premises in a shop and with materials and tools furnished by the company and according to the company's specifications; and that the men had agreed to build a certain number of such cars, for which they were paid an agreed price per car.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. CHARLES H. MILLER, Judge, presiding.

GEORGE R. STONE, and R. E. HICKMAN, for plaintiff in error.

W. H. HART, and W. W. HART, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Henry F. Weaver was injured on October 28, 1918, while using a joiner or planer in the construction of mine or pit-cars, so that he lost the use of some of the fingers of his left hand, and upon his application an award of compensation was made to him by the Industrial Commission against the Franklin Coal and Coke Company. Upon a writ of *certiorari* the circuit court of Franklin county set aside the award and the claimant has sued out a writ of error to reverse this judgment.

The only controversy is whether the plaintiff in error at the time of his injury was working for the defendant in error as an employee, or was an independent contractor or was working for an independent contractor.

The defendant in error was operating coal mines at Royalton, in Franklin county, and the plaintiff in error had been in its employ as a carpenter most of the time for three or four years before he was injured, being carried on the pay-roll and drawing his pay, as did other employees, twice a month, at the rate of seventy-five cents an hour for the time he worked. Before the accident the defendant in error had difficulty in getting mine cars for use in its mines, which it had been accustomed to purchase, and it therefore arranged to get the material and have the cars constructed. The cars were built by the plaintiff in error and George Taylor, another carpenter employed by the defendant in error, in the shop provided by defendant in error upon its premises about 700 or 800 feet from one of its shafts. The defendant in error furnished all materials and practically all the tools used in the construction of the

cars and directed the sizes and dimensions of the cars to be built. The plaintiff in error and Taylor were paid $17.50 for the work on each car. While they were at work on the cars they were also subject to the orders of defendant in error for other work about the mine as carpenters, and actually did other carpenter work for the defendant in error, for which they were paid at the rate of seventy-five cents an hour on the pay-roll of the company.

Concerning the contract for the work on these cars the plaintiff in error testified: "Mr. Mitchell asked me one morning when I walked into the office how it would suit me to go to Coffeen, Illinois, to build 50 mine cars, and I asked him what he wanted to give me for building these cars, and he told me Mr. Taylor was going to build 75 cars at $18 a car, and he would let me know the next Monday about going to Coffeen. I went to see him the next Monday and he said he was not allowed to build the cars up there on account of the local, and had me go down and see if he could arrange an old lumber yard place downtown to build them at Royalton and make a shop out of it. I went and looked it over and told him that we couldn't arrange to build the cars down there, so he said he would build these cars over there at the mine; that he would go to work and put that shop up and for me to see Mr. Taylor, and if it was agreeable with Mr. Taylor we would build all the cars there at this one shop and he would ship the cars to Coffeen. I saw Mr. Taylor and he said it was all right with him; he would be glad for me to help him and he would help me build the cars, and so we just started in the work in that way. We had built 37 cars when I got hurt. The contract with the respondent company was first took by Mr. Taylor, and then Mr. Mitchell later on wanted me to make these 50 for him. The ones that he wanted at Coffeen were never made. I never made that contract with Mr. Mitchell. If any contract was made at all it was Mr. Taylor that made the contract. I made no

contract with Mr. Mitchell at all. He only talked about it but it was never finished." ·

Taylor testified: "The pit-cars were built for the Franklin Coal and Coke Company by the order and direction of J. L. Mitchell. He asked me some time before to take a contract to build these cars. I told him one morning I was ready to build them if we could agree on prices, and we agreed on $18 a car, and I saw Mr. Weaver and he offered to go in fifty-fifty with me and we would build the cars. The contract was made with Mr. Mitchell and me but not in the presence of Mr. Weaver. He hadn't anything to do with it. I made the contract myself, and Mr. Weaver was helping in that work when he was injured. I don't know that it was with the knowledge and consent of Mr. Mitchell that Mr. Weaver and I assumed the contract that I had with Mitchell. I feel myself that before I did anything under the contract that I took Mr. Weaver for my partner. We did the work with Mr. Mitchell's consent. We built 37 cars. We were paid $17.50 for each car. The regular business of the Franklin Coal and Coke Company was the mining and marketing of coal. I think the intention of the company was to build its own cars from that time on. Mr. Mitchell told me when we built these 75 he would have another 75, and he didn't say they were for Coffeen. He said the cars were for the north and south mines. The 37 cars were all built. They are ordinary mine cars. I was on the pay-roll in addition to pay for the cars, at the same time. I worked on some houses that were built near the school house. I helped on four other new houses that were used for school purposes, and then we loaded some cars used out at Coffeen, and other work. Mr. Weaver was paid the same as I was. We was paid for what we done,—just like the miners would be for continuous work. The car work was a different proposition from this other work. We would build cars one day and work at something else one day. We was

paid for the work when we got done, and then we would work at something else for half a day and be on the pay-roll for the other work."

J. L. Mitchell, the president of the company, testified: "I gave him (Weaver) and George Taylor a contract to build mine cars. The arrangements were all oral and made before the alleged injury,—two or three months, I think. As I remember it, it was to be $17 a car, but when Mr. Taylor and I closed up I think he wanted $18 and we compromised at $17.50. We furnished everything,—furnished the material. They built the cars at that price. By 'they' I mean George Taylor and Henry Weaver. The aggregate of the contract was between $500 and $600. I think it was $595, which was 34 mine cars at $17.50. There has been $595 paid. I could not say how the payments were made. Our people needed cars and repair cars. We mine coal with organized labor, and this was not organized labor. These payments were made as the contractors wanted them. These payments did not go on the pay-roll at all. It was just run through our expense accounts."

In the case of *Bristol & Gale Co.* v. *Industrial Com.* 292 Ill. 16, it is said that it is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors; that each case must depend on its own facts, and ordinarily no one feature of the relation is determinative but all must be considered together. In that case is a very full discussion of the circumstances under which persons engaged in doing work may be regarded as employees or as independent contractors and many cases are considered in which their relation has been adjudicated. It is held that the principal consideration in determining whether a worker is an employee or an independent contractor is the right to control the manner of doing the work. It is not the actual exercise of the right by interfering with the work but the right to control which .

constitutes the test. Many definitions of an independent contractor have been made but they are not essentially different, and the definition given in Jaggard on Torts (sec. 73) may be regarded as a correct statement of the law: "An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." The fact that payment is to be made by the piece or the job or the day or hour is not necessarily controlling, where the workman is subject to the control of the employer as an employee and not a contractor. Here the work was done on the employer's premises, in a shop provided for the purpose, with materials furnished by the employer and with its tools. The workmen were regular employees of the defendant in error. They were subject to be called from this work, and actually were called from the work at various times by the employer to do other work which it desired done. The company told them what the sizes and dimensions of the cars were to be, the height and width, and the height of the wheels, and the workmen made them accordingly. The work was not of a character requiring a great deal of supervision. The men doing the work had all the skill that was necessary to make the cars, and they were given the dimensions and kind of cars that were to be constructed. Little or no direction or oversight was necessary. When they once had their instructions they could proceed with their work without the necessity of any interference by the employer. Whether the plaintiff in error and his associate, Taylor, were employees of the defendant in error or independent contractors was a question of fact to be determined from the evidence. If there was a conflict of the evidence in this case it is manifest that there was evidence tending to show that they were employees and not independent contractors, such as would reasonably justify the conclusion that they were employees. Under such circumstances the decision of the Industrial Commis-

sion that the plaintiff in error was an employee of the defendant in error is conclusive. *Cinofsky* v. *Industrial Com.* 290 Ill. 521.

The circuit court erred in setting aside the award, and its judgment will be reversed and the award of the Industrial Commission confirmed.

*Judgment reversed; award confirmed.*