IRVAN *v.* BOUNDS.

4-7036                                    170 S. W. 2d 674

Opinion delivered May 3, 1943.

*Ned A. Stewart,* for appellant.

*Lee & Allen,* for appellee.

ROBINS, J.   Clyde Bounds was killed by a dynamite blast on December 16, 1941, while digging a well for appellant, Henry Irvan, at Irvan's sawmill in Sevier county. The Arkansas Workmen's Compensation Commission awarded compensation for his death at the rate of $7 per week for a period not to exceed four hundred and fifty weeks to his widow, appellee Lilly Louise Bounds, and his minor children, appellees Dorothy Lee Bounds and James Thomas Bounds.   To reverse the judgment of the circuit court affirming the award this appeal is prosecuted by Irvan and Hartford Accident & Indemnity Company, his insurance carrier.

The evidence before the commission established that Rufus Rutledge and Clyde Bounds were employed by Irvan to complete the well, which had already been dug to a depth of fifteen feet by other workmen.   While there was some contention before the commission and in the circuit court to the effect that only Rufus Rutledge was hired by Irvan and that Rufus Rutledge employed Bounds as his helper, the evidence justified a finding that Rutledge and Bounds both were employed by Irvan.   In the oral argument here it was conceded that both men were employed by Irvan, and that they were to be paid for their work at the rate of $1 per foot, or at least 35 cents an hour.

For reversal of the judgment of the lower court it is urged by appellants that the relationship of employer and employee did not exist between Irvan and Bounds, but that Rutledge and Bounds were independent contractors, and, therefore, the widow and children of Bounds were not entitled to compensation, which, under the Workmen's Compensation Law, is available only for the benefit of employees and their dependents.

In 71 Corpus Juris, p. 449, it is said: "In determining whether a workman is an employee or an independent contractor, the act is to be given a liberal construction

754

in his favor, and any doubt is to be resolved in favor of his status as an employee, rather than as an independent contractor; . . ."

The definition of "employee," as set forth in § 2 of the Arkansas Workmen's Compensation Law, is: "Any person, . . . including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, expressed or implied . . ."

The undisputed evidence in this case shows that, under the agreement by which Rutledge and Bounds were employed by Irvan, Irvan had the right to discharge Rutledge and Bounds, or either of them, at any time, and they had the right to quit the work at any time; and that Irvan furnished the tools with which the work was to be done and the dynamite used in connection with the digging of the well. Rutledge testified that Irvan, after it was found necessary to use dynamite, procured the dynamite and told him and Bounds where to get a crowbar and directed them to drill a hole in the center of the well and place the dynamite therein, and that while the work was going on Irvan came out and looked at it several times. This was not denied by Irvan.

The definition of "employee" under the Workmen's Compensation Law of Colorado is almost the same as that contained in the Arkansas Workmen's Compensation Law. In the case of *Industrial Commission of Colorado* v. *Bonfils*, 78 Colo. 306, 241 P. 735, it appeared that Sprigg was hired by the Continental Investment Company to haul coal in his own truck to customers of the company at a fixed price per ton. As stated in the opinion, "he was allowed to haul it himself or employ others; he was allowed to come and go as he pleased; need not report for work at any time nor at all unless he chose; could work for others if he desired. He called at the yard when he pleased, and was given coal to haul if there was any to be hauled when he called. The company was under no obligation to give him work, and he was under no obligation to work for the company; therefore he could quit when he chose, and the company could discharge him

when it chose. This was service for hire. . . . By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. *Franklin Coal & Coke Co.* v. *Ind. Com.,* 296 Ill. 329, 129 N. E. 811.''

In the case of *Frost* v. *Blue Ridge Timber Corporation,* 158 Tenn. 18, 11 S. W. 2d 860, the widow of John N. Frost sought compensation under the Workmen's Compensation Law for the death of her husband who was killed while hauling lumber for the corporation. Frost was employed to haul lumber and furnish his own team at so much per thousand feet, and the superintendent of the timber corporation testified ''that he did not exercise any control over Frost as to the number of loads he carried, nor the quantity of lumber on each load, nor as to the number of days he worked.'' The corporation had the right to terminate the employment at any time with or without cause. The supreme court of Tennessee, holding that Frost was an employee and not an independent contractor, said: ''In *Odom* v. *Sanford & Treadway,* 156 Tenn. 202, 299 S. W. 1045, *supra,* this court quoted with approval from Ruling Case Law (volume 14, p. 67): 'In this connection, the ultimate question is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control.' And again: 'The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself.' 156 Tenn. 210, 299 S. W. 1047, quoting from 14 R. C. L., p. 72. The two circumstances mostly relied upon by the employer to place Frost in the status of an independent contractor are the fact that he was paid accord-

ing to the amount of work done, and the fact that the employer's superintendent did not exercise control over the amount of work done. These circumstances are not conclusive, as is clearly indicated by the authorities cited, since they do not exclude the employer's right to control or to terminate the employment at will.''

Chief Justice Green, of the supreme court of Tennessee, in the case of *Marshall* v. *South Pittsburg Lumber & Coal Co.,* 164 Tenn. 267, 47 S. W. 2d 553, reviewing an award made by the Workmen's Compensation Commission in favor of Marshall, a carpenter who had bought some lumber from the company and who had been in turn employed by the company to dress the lumber down to the desired dimensions, said, in response to the argument that Marshall was an independent contractor because the company did not have or exercise any control over the work: ''In theory of law, we think there was no doubt of defendant's right to control plaintiff in the execution of this work. Defendant might have discharged plaintiff from this work, or ordered him to do the work in any manner desired.''

In Re *James Murray,* 130 Me. 181, 154 Atl. 352, 75 A. L. R. 720, it appeared that Murray was employed by the Oldtown Woolen Company, Inc., to unload coal for 20 cents per ton, out of which he paid the men who assisted him in unloading it. The company provided a machine used in unloading and shovels for the men. Murray employed helpers and fixed their wage scale. He was not employed for any certain length of time, and the company could discharge him at any time with or without cause. The supreme court of Maine held that under the facts stated Murray was an employee of the company and not an independent contractor. In that case the court said: ''Our court has said in *Dobson's Case, supra,* 124 Me. 305, 128 Atl. 401, 42 A. L. R. 603, that the right to discharge the employee at will is not, taken alone, the decisive test as to whether or not he is an independent contractor, but that fact strongly tends to establish the relationship. 'The power of an employer to terminate the employment at any time is incompatible with the full control of the work that is usually enjoyed by an inde-

pendent contractor.' *Bowen* v. *Gradison Construction Co.,* 236 Ky. 270, 32 S. W. 2d 1014. 'No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself.' *Cockran* v. *Rice,* 26 S. D. 393, 128 N. W. 583, Ann. Cas. 1913B, 570. 'The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists. While it is not the sole test, it is the best test upon the question of control.' *Messmer* v. *Bell,* 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1. 'By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that if it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor.' *Franklin Coal & Coke Co.* v. *Ind. Comm.,* 296 Ill. 329, 129 N. E. 811. 'The most important point "in determining the main question (contractor or employee) is the right of either to terminate the relation without liability." *Industrial Comm.* v. *Hammond,* 77 Colo. 414, 126 Pac. 1006; *Industrial Comm.* v. *Bonfils,* 78 Colo. 306, 241 P. 735; *Barclay* v. *Puget Sound Lumber Co.,* 48 Wash. 241, 93 P. 430, 16 L. R. A., N. S., 140; *Nyback* v. *Champagne Lumber Co.,* (C.C.A.) 109 F. 732; *Evans* v. *Dare Lumber Co.,* 174 N. C. 31, 93 S. E. 430, 30 A. L. R. 1498'."

The Vermont Supreme Court, in the case of *Kelley's Dependents* v. *Hoosac Lumber Co.,* 95 Vt. 50, 113 Atl. 818, affirming an award under the Workmen's Compensation Act of that state in favor of the widow and children of Kelley, a timber cutter killed while cutting logs, said: "The fact that Kelley was paid by the thousand is an important feature indicating that he was an independent contractor—though, as all agree, it is not conclusive. . . . On the other hand, the fact that the defendant could, at any time, and without liability, stop the work and terminate the relation, is an important feature indicating that Kelley was, under the law an employee . . . and the fact that the defendant was to furnish the tools . . . indicate an arrangement for service only."

The Supreme Court of Illinois, in the case of *Cinofsky* v. *Industrial Commission,* 290 Ill. 521, 125 N. E. 286, said: Counsel for plaintiffs in error also argues that the appellant, Decker, was not an employee, but an independent contractor. The evidence already set out shows that on this point it was conflicting. Decker and Ashcraft testified that they were employed and held on piece work only until certain cars were set, when they were to be paid by the day, and it is conceded that they did not furnish their own tools. It has been held that the principal test as to whether one is an employee or an independent contractor lies in the degree of control retained and exercised by the person for whom the work is being done. *Meredosia Drainage District* v. *Industrial Com.,* 285 Ill. 68, 120 N. E. 516. 'The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. This work was very simple. No control would ordinarily be required except to direct where the coal should be unloaded, and this control was exercised. There was nothing in the contract indicating that the company surrendered the right to control the manner in which the unloading should be done. It retained the right to discharge Mulverhill on the instant.' *Decatur Railway & Light Co.* v. *Industrial Board,* 276 Ill. 472, 114 N. E. 915. The same may be said here. Little supervision was required for this particular work. If the applicant once had his instructions it would not be difficult for him to proceed with his work of stripping the engines without any interference from his employer. This court held that one who applied for work as a driver of a motor truck under an agreement that if he was capable of handling a car he would be given employment for three weeks was an employee, notwithstanding he was killed at the end of the first half day of his work and before his name was on the payroll. *Field & Co.* v. *Industrial Com.,* 285 Ill. 333, 120 N. E. 773. The mere fact that the employment is for one job only does not necessarily take the employment from under the act. *American Steel Foundries* v. *Industrial Board,* 284 Ill. 99, 119 N. E. 902.''

No hard and fast rule for determining the relationship of the parties in every case of this kind can be laid down by the court. Each case must necessarily be governed by its own peculiar facts. In the case at bar the evidence establishes these *indicia* of the relationship of master and servant: Furnishing of tools for the work by appellant; furnishing of material for the work by appellant; and the right of appellant to terminate Bounds' services at any time that he might see fit, with the corresponding right on the part of Bounds to quit the job at any time. The nature of the work was such that very little, if any, actual supervision over the manner of doing it was necessary, but there was evidence that Irvan did exercise some control as to the manner of the doing of the work. As to the amount he was to pay for the work in the well Irvan testified: "I would have to see that he made thirty-five cents an hour. I do an interstate business and this well was on my mill yard and is used in connection with my hands and mill." A reasonable interpretation of this statement is that Irvan was complying with the Federal Wage-Hour Law as to the pay of these men, and it indicates that Irvan considered Bounds to be an employee, because, if Bounds was an independent contractor, and not an employee, it was not necessary, in order to comply with the federal law, to guarantee him any minimum wage. While it might be properly held that no one of the facts as to the relationship of the parties shown in this case conclusively establishes that Bounds was the employee of Irvan, we are of the opinion that all the facts and circumstances established by the testimony, when considered together, are sufficient to sustain the award of the commission and the judgment of the circuit court. The judgment of the lower court is accordingly affirmed.