RIDDELL FLYING SERVICE *v.* Clarence CALLAHAN, et. al.

CA 04-691                                    206 S.W.3d 284

Court of Appeals of Arkansas
Opinion delivered April 6, 2005

[Rehearing denied May 11, 2005.*]

---

* GRIFFEN, J., would grant rehearing.

*Frye, Boyce & Hill, P.A.*, by: *Andy L. Caldwell*, for appellant.

*Richard S. Smith*, for *Public Employee Claims Div., Ark. Ins. Dep't*, for appellees.

J OHN B. ROBBINS, Judge. In this appeal from the Workers' Compensation Commission, it is undisputed that pilot Clarence Douglas Callahan was seriously injured in a plane crash on April 9, 1995. The issue in this case was the determination of the responsible party for Callahan's injuries.

Appellant Riddell Flying Service is in the business of providing crop dusting services and selling new and used airplanes. It is an uninsured entity. In 1995, Riddell successfully bid on a state contract for the Arkansas Forestry Commission, which had received Federal Emergency Management Agency funds following ice storms in the region. Riddell bid on the service of providing preventive forest firefighting services, agreeing to provide three planes and three pilots to get the job done. Callahan was one of the pilots provided for the job, and while firebombing, Callahan crashed. In the claim for benefits, Riddell and the Arkansas Forestry Commission ("AFC") were named as potential employers and responsible parties.

The Administrative Law Judge found that Callahan was not an independent contractor but an employee of Riddell and that AFC was the prime contractor and bore responsibility for the claim. AFC appealed. On March 12, 2004, the Workers' Compensation Commission found (1) that Callahan was an employee of Riddell rather than an independent contractor, and (2) that Riddell was a contractor to AFC when Callahan was injured, but that AFC was not a "prime contractor" such that only Riddell, not AFC, was liable for workers' compensation benefits.

Appellant Riddell filed a timely notice of appeal, contending that the Commission's finding that Callahan was an employee is not supported by substantial evidence. Callahan filed a notice of cross-appeal, contesting the finding that AFC was not the prime contractor and thus asserting that AFC is liable for his workers' compensation benefits.[1] In response to the arguments of Riddell and Callahan, AFC contends that Callahan was not an employee, and further that AFC was not a prime contractor. We affirm the

---

[1] Callahan filed a timely notice of cross appeal, but the next day he filed a notice to withdraw his cross appeal. A subsequent letter and notice of appeal in his addendum purporting to again file a cross appeal are not file marked, nor are they part of the record on appeal. Nevertheless, the record on appeal contains an order of the Commission finding that it had no jurisdiction to grant Callahan's motion to dismiss his cross-appeal because the matter was pending before the appellate court, and further that even if it had jurisdiction, there was

finding that Callahan was an employee of Riddell, and we affirm the finding that AFC was not a prime contractor.

This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 4-5, 69 S.W.3d 899, 902 (2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*

We first review the finding of Callahan's employment status. The determination of whether a person was an employee or an independent contractor at the time of injury is a factual one. *See Franklin v. Arkansas Kraft, Inc.*, 12 Ark. App. 66, 670 S.W.2d 815 (1984) ("*Franklin II*"); *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983); *Franklin v. Arkansas Kraft, Inc.*, 5 Ark. App. 264, 635 S.W.2d 286 (1982) ("*Franklin I*"). Once the Commission makes that factual determination, we view the evidence in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. In order to reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have arrived at the conclusion reached by the Commission. *Franklin II, supra.* The question on appeal is not whether the facts at bar would have supported the opposite conclusion, but whether these facts supported the decision the Commission made. *Id.*

In *Franklin I*, our court stated:

---

not an agreement of all parties to do so pursuant to Ark. R. App. P.–Civ. 3(b)(2004). The Commission denied the motion to withdraw, and it noted that any request should be made to the court of appeals. None was made.

There are numerous factors which may be considered in determining whether an injured person is an employee or an independent contractor for purposes of workers' compensation coverage. Obviously, the relative weight to be given the various factors must be determined by the Commission. Some of the factors which might be considered, depending on the facts of a given case, are:

(1) the right to control the means and the method by which the work is done;

(2) the right to terminate the employment without liability;

(3) the method of payment, whether by time, job, piece or other unit of measurement;

(4) the furnishing, or the obligation to furnish, the necessary tools, equipment, and materials;

(5) whether the person employed is engaged in a distinct occupation or business;

(6) the skill required in a particular occupation;

(7) whether the employer is in business;

(8) whether the work is an integral part of the regular business of the employer; and

(9) the length of time for which the person is employed.

These are not all the factors which may conceivably be considered in a given case, and it may not be necessary in some cases for the Commission to consider all of these factors. Traditionally, the "right to control" test has been sufficient to decide most of the cases, although many variations of "control" have probably been squeezed into that test.

*Franklin I*, 5 Ark. App. at 269-70. The ultimate question in these cases is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control. *See Irvan v. Bounds*, 205 Ark. 752, 170 S.W.2d 674 (1943); *Wright v. Tyson Foods, Inc.*, 28 Ark. App. 261, 773 S.W.2d 110 (1989). The resolution of the issue depends upon the facts of each case. *Sands v. Stombaugh*, 11 Ark. App. 38, 665 S.W.2d 902 (1984).

The Commission reviewed the testimony, and it applied the factors applicable to the determination of an agency relationship in *Restatement (Second) of Agency*, § 220. Those factors are identical to the nine listed above with the exception of not including factor two above (right to terminate), and adding as factors: (1) whether the type of work is usually done with supervision or by a specialist without supervision, and (2) whether the parties believe they are creating a master/servant relationship. The Commission also cited to *Franklin I* for the proposition that not all factors that could conceivably be relevant have to be considered in every case, and furthermore that it was vested with the power to determine the weight to be given to the various factors. The Commission pointed out that the right to control is paramount.

The relevant testimony is outlined as follows. Riddell had never before performed firebombing services, so he contacted Burl Shears, the owner of a different flying service company. Riddell and Shears agreed that Shears would receive one-third of the contract amount if he supervised the performance of the contract and provided one plane and one pilot; Riddell was to provide the other two planes and pilots. Riddell made arrangements with Mooney Easley and Callahan (claimant) to fly his two planes. Both Easley and Callahan received federal 1099 forms from Riddell, who did not consider either man to be an employee. Callahan was paid $500 per week to be on standby and a certain amount per actual flight hour, and his out-of-town expenses were paid by Riddell. Callahan was also a certified airplane mechanic, and he hoped that in the off-flying time he could work as a mechanic. Callahan quit his earlier employment to work for Riddell. Riddell provided the plane, the fuel, the radio, and Callahan's helmet. Callahan worked only when called and was supervised by Shears.

The Commission found that though the manner of his pay was more indicative of an independent contractor, this was outweighed by the control exerted by Riddell and Shears over his assignments of when and where to fly and by their provision of all the necessary tools for him to complete the task. The Commission found that Callahan was, therefore, an employee. There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Brower Mfg. Co. v. Willis*, 252 Ark. 755, 480 S.W.2d 950 (1972). We hold that the Commission applied appropriate factors to the facts of this claim, and we cannot say that its factual finding is not supported by substantial

evidence. *See Wright v. Tyson Foods, Inc., supra* (affirming finding of Commission that relief driver was employee, rather than independent contractor for self-insured employer; even though there was some evidence to the contrary, evidence showed that driver was backup driver; company furnished truck, loaded and fueled; company supervisor controlled driver's time schedule, expected the same work out of relief drivers as regular drivers, could dismiss relief driver, and expected relief drivers to follow and respond to supervisor's directions).

The other issue on appeal concerns the Commission's finding that AFC was not the "prime contractor" over Riddell, thus rendering Riddell the responsible party. The relevant law on this topic is found at Ark. Code Ann. § 11-9-402(a) (Repl. 2002), which states that "[w]here a subcontractor fails to secure compensation required by this chapter, the prime contractor shall be liable for compensation to the employees of the subcontractor." The Commission determined that AFC was not obligated to a third-party for Riddell's proper completion of the state contract. Therefore, AFC was not the "prime contractor," and thus section 11-9-402 did not apply. The Commission found that Riddell was a contractor to AFC, but AFC was a contractor to no one. We hold that this finding is also supported by substantial evidence.

In *Bailey v. Simmons*, 6 Ark. App. 193, 639 S.W.2d 526 (1982), our court provided a definition of "subcontractor" within the meaning of section 11-9-402:

> A subcontractor is one who enters into a contract with a person for the performance of work which such person has already contracted to perform. In other words, subcontracting is merely "farming out" to others all or part of work contracted to be performed by the original contractor.

*Id.*, 6 Ark. App. at 196. The *Bailey* decision determined that there cannot be a prime contractor without a contract to do the work for a third party. *See also Lofton v. Bryan*, 237 Ark. 376, 373 S.W.2d 145 (1963).

In the present appeal, the Commission reviewed the status of the relationship between Riddell and AFC. The Commission agreed that there was some control exerted by AFC over Riddell, which was expected given the state contract between the two. In examining the relationship between AFC and the federal

government, the Commission noted that AFC was awarded federal grant monies to reduce the increased fire hazard created by the ice storms of early 1994. The federal emergency plan, supported by the grant funds, required cooperation between the state and federal governments to meet the objective of abating wildfires. This is borne out by the plan's stated goal of reducing risk of losing life and property to wildfire by public education via mass media, rapid response to any fire ignition, and reduction of hazards in high-risk areas. However, there was no evidence that a contractual obligation existed in the manner of how AFC met those goals, and AFC was thus found to be a contractor to no one. The status of a prime contractor presupposes work to be done for a third party. *Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996). We cannot say that the Commission's finding that AFC was not a prime contractor is not supported by substantial evidence.

Affirmed on direct appeal; affirmed on cross-appeal.

BIRD and CRABTREE, JJ., agree.

GRIFFEN, J., dissents.

BAKER and ROAF, JJ., concur.

ANDREE LAYTON ROAF, Judge, concurring. I agree with the majority's discussion concerning affirmance of this case. However, I would affirm without addressing the merits based upon Riddell Flying Service's failure to bring up a record sufficient for us to examine the relationship between the United States Forest Service (USFS) and the Arkansas Forestry Commission (AFC), pursuant to the receipt of "FEMA" funds. The only mention of the substance of this relationship in the addendum before us is contained in the ALJ and dissenting commissioners' opinions, where there is reference to a "Wildlife Abatement Plan" prepared by USFS and AFC and excerpts from this plan which reference a "cooperative agreement" between AFC and the USFS, and the stipulations regarding the plan entered into by the parties. It may be that these excerpts constitute the substance of the plan with regard to the issue of whether AFC is a contractor of USFS. However, this court has never considered such as a substitute for the document or contract under review. *Nat'l Enterprises, Inc. v. Rea*, 329 Ark. 332, 947 S.W.2d 378 (1997). In this case it is the agreement itself, and not what the ALJ and a dissenting commissioner choose to say about it or excerpt from it, that the appellant should have provided. Moreover, we do not go to the

record to reverse a case. *Russell v. State*, 85 Ark. App. 468, 157 S.W.3d 561 (2004); *Camp v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999).

BAKER, J., joins.

WENDELL GRIFFEN, Judge, dissenting. I agree that Clarence Callahan's employer was Riddell Flying Services (RFS), not the Arkansas Forestry Commission (AFC). However, I dissent because the AFC should be liable as the statutory employer ("prime contractor") by virtue of its undisputed cooperative agreement with the United States Forestry Service (USFS) to provide fire-suppression services. I also dissent because our courts' misunderstanding of the purpose of the statutory employer rule has led to improper reliance on contract-law analysis in determining statutory-employer liability.

The AFC's obligation to perform fire-suppression services is plainly demonstrated by stipulations that the parties entered into concerning the relationship between the AFC and the USFS. The parties stipulated that (a) the AFC entered into a cooperative agreement with the USFS to conduct fire-suppression activities; (b) that the AFC obtained funds from the Federal Emergency Management Agency (FEMA); and (c) that the FEMA funds were used to engage RFS to perform fire-suppression activities. I see no reason why those stipulations are not sufficient to meet the standard for establishing that AFC is a prime contractor under the legal standard set by the Arkansas Supreme Court in *Bailey v. Simmons*, 6 Ark. App. 199, 639 S.W.2d 526 (1982), the case upon which the majority relies. The majority acknowledges the undisputed facts that the AFC "received Federal Emergency Management Agency funds following ice storms in the region," and that RFS "successfully bid on a state contract for Arkansas Forestry Commission" and was paid for its fire-suppression activities from the FEMA funds.

It has long been settled law in Arkansas that a stipulation is the equivalent of undisputed proof, and it leaves nothing for the fact-finder to decide regarding the stipulated subject. *See Brown v. Keaton*, 232 Ark. 12, 334 S.W.2d 676 (1960). Thus, there is no substantial evidence disputing that the AFC engaged RFS to perform fire-suppression activities in furtherance of the cooperative agreement between the AFC and USFS. Because the AFC entered into a stipulation on this point at the hearing before the Administrative Law Judge, it should not now be permitted to

disown that stipulation and argue that it had no obligation to perform fire-suppression activities. Yet, that is the practical effect of both the Commission's decision and the majority opinion.

The rationale of the Arkansas General Assembly in enacting the workers' compensation laws is unmistakably clear. Arkansas Code Annotated Section 11-9-101(b)(Repl. 2002) states:

> The primary purposes of the workers' compensation laws are *to pay timely temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom,* and then to return the worker to the work force; . . . .

(Emphasis added.) Given that the parties stipulated that Callahan was seriously injured in a plane crash on April 9, 1995, while performing fire-suppression activities pursuant to RFS's contract with the AFC, the decisions by the Commission and majority fly in the face of the explicit purposes for which the workers' compensation laws exist as well as settled law regarding the probative effect of stipulations during adjudicated proceedings.

The *Bailey v. Simmons* line of decisions does not absolve a governmental entity from liability as a statutory employer merely because the governmental entity is not itself engaging in a commercial enterprise. To the contrary, the liability and duties countenanced by Ark. Code Ann. § 11-9-402 (Repl. 2002) are to benefit the uninsured subcontractor's employees by preventing all employers (governmental or not) from relieving themselves from workers' compensation liability by doing through independent contractors what they would otherwise do through direct employees. *Liggett Const. Co. v. Griffin,* 4 Ark. App. 247, 629 S.W.2d 316 (1982).

This case is quite different from *Sloan v. Voluntary Ambulance Service,* 37 Ark. App. 138, 826 S.W.2d 296 (1992), which also involved the issue of whether a government entity was liable as a statutory employer. There, the citizens of the northeast portion of a county assessed a tax on themselves to secure dependable emergency ambulance services. The county collected and remitted the taxes to the ambulance service. The Arkansas Supreme Court held that arrangement did not create statutory employer liability for the county because the county served only as a conduit for collecting and remitting the tax.

But here the AFC was much more than a mere conduit for payments. Pursuant to the AFC's cooperative agreement with the

USFS, it procured federal funds for the explicit purpose of engaging in fire-suppression service. The AFC then contracted with RFS to conduct those services. The AFC exercised control over the activities of RFS regarding how and when firebombing missions were flown. Both the majority and the Commission acknowledge these undisputed facts. Thus, reversal is entirely consistent with *Bailey v. Simmons, supra,* and its progeny.

I also dissent because today's decision is the latest in a long line of decisions in which the Commission and our appellate courts have misinterpreted the law concerning statutory employers. At some point, we should admit that those decisions demonstrate a fundamental misunderstanding of the rationale for statutory-employer liability based on what appears to be misapplication of contractual-privity reasoning when adjudicating statutory-employer liability.

The purpose for the statutory-employer statute is to hold a contracting employer liable when its subcontractor does not carry workers' compensation insurance so that injured workers have a remedy under the workers' compensation law. *Hobbs Western Co. v. Craig,* 209 Ark. 630, 192 S.W.2d 116 (1946) (stating that the primary purpose of the statutory employer provision is to protect the employees of subcontractors who are not financially responsible, and to prevent employers from relieving themselves from liability by doing through independent contractors what they would otherwise do through direct employees); *Liggett Constr. Co. v. Griffin, supra.* Thus, the "prime contractor" becomes the "statutory employer" where the subcontractor carries no compensation insurance. *Lewis v Indus. Heating & Plumbing,* 290 Ark. 291, 718 S.W.2d 941 (1986).

The purpose behind § 11-9-402 may more fully explained as follows:

> Most statutes impose a special compensation liability upon an employer who gets part of its regular work done by the regular employees of a contractor under it, if the intermediate contractor's compensation liability is uninsured. Since *one purpose of these statutes is to prevent evasion of compensation coverage by the subcontracting of the employer's normal work, the test of applicability is the question whether the work being done under the contractor would ordinarily be done by employees,* in view of this employer's past practices and the practices of employers in comparable businesses.

ARTHUR LAWSON, WORKERS' COMPENSATION LAW, Volume § 70 (2000) (emphasis added).

We have strayed far afield from this original purpose by improperly injecting the notion of contractual privity into the determination of whether an entity is a statutory employer. The "prime contractor" concept holds that one cannot have a subcontractor unless there is a prime contractor who has already contracted to have the services performed. *Bailey v. Simmons, supra*. Granted, section 11-9-402 recognizes that before holding the purported statutory employer liable, it is appropriate to establish a contractual relationship *between the immediate employer and the party alleged to be the statutory employer*. In fact, that issue was the focus of the first case interpreting Ark. Stats. Ann. § 81-1306 (1947), a predecessor statute to § 11-9-402. *Hobbs, supra* (holding that there must be a contractual relation between the statutory employer and the subcontractor, and not merely a contract of purchase, in order for the prime contractor to become a statutory contractor under the statute).

However, given the clear purpose of § 11-9-402 to provide a remedy to injured workers under the workers' compensation statutes, it is untenable to suggest that by simply using the words "prime contractor" and "subcontractor" in § 11-9-402, the Arkansas General Assembly intended for an injured worker to bear the consequences of his immediate employer's failure to provide workers' compensation insurance because the entity with whom the immediate employer contracts is not otherwise contractually obligated to some unknown third party to perform the same services. It is, to be blunt, manifestly wrong to require an injured worker to show that the purported statutory employer satisfies a contractual definition of "prime contractor" or that his immediate employer is a "subcontractor" as that term is used in contract law before the employee can recover for his injuries under workers' compensation law.

The wrong turn began with the case of *Brothers v. Dierks Lumber & Coal*, 217 Ark. 632, 232 S.W.2d 646 (1950). Relying on *Hobbs, supra*, the *Brothers* court held that in order to be a principal contractor pursuant to § 81-1306, there must be a contract for the sale of goods, accompanied by an undertaking to render substantial services in connection with the goods sold. In a subsequent case, *Huffstettler v. Lion Oil Co.*, 110 F. Supp. 222 (D.C. Ark. 1953), a federal district court relied upon the *Brothers* holding and reiterated

the "contract for sale" requirement plus the rendering of "substantial services" requirement as enunciated by the *Brothers* court.

The decisive step on the slippery slope came with the case of *Lofton v. Bryan*, 237 Ark. 642, 375 S.W.2d 221 (1964). In that case, the Arkansas Supreme Court relied on the *Huffstettler* case to deny workers' compensation benefits to an employee because the purported statutory employer did not have a contract with a third person in relation to the services the employee performed. The *Lofton* court held that the immediate employer was not considered a subcontractor under § 81-1306, which meant that there was no prime contractor and thus, no liability as a statutory employer.

Although it is improper to inject contract-law notions of privity into a workers' compensation analysis to assign statutory employer liability, that is what the Commission and our courts have consistently done by insisting that there be some sort of recognized contractual relationship between the purported statutory employer and a third-party. A thorough review of the purpose of the statutory-employer statute demonstrates that the determinative considerations are the relationship of the injured worker *to the work* and the relationship of the purported statutory employer *to the work* — not the relationship of the purported statutory employer or the work to a third party.

Accordingly, the proper analysis is not whether the AFC was contractually liable to a third party to carry out fire-suppression services, but whether Callahan was performing the regular work of the AFC. This case should be analyzed as follows: 1) Are fire-suppression services part of the AFC's regular work? 2) If so, did the AFC have an agreement with RFS to perform fire-suppression services? 3) If so, was Callahan Riddell's employee and was he engaged in fire-suppression services pursuant to the agreement between RFS and the AFC when he was injured? 4) If so, did Riddell carry workers' compensation insurance? 5) If not, then the AFC is Callahan's statutory employer and, as such, must bear workers' compensation liability for his injuries and benefits.

Pursuant to this analysis, it is clear that the AFC is Callahan's statutory employer. Fire-suppression services are part of the AFC's regular work. It maintains a cooperative agreement with the USFS that allows for the exchange of fire-suppression services on a reciprocal or reimbursable basis. The AFC used its FEMA grant to procure a contract with RFS to perform fire-suppression services in southeast Arkansas. Callahan was injured while performing

fire-suppression services under the contract between AFC and RFS. Accordingly, the AFC is Callahan's statutory employer and as such, should be liable for his compensable injuries because it contracted with an entity that did not secure workers' compensation insurance.

In short, excusing an entity from liability as a statutory employer merely because that entity is not contractually obligated to a third party to perform the activities the employee was performing when he was injured violates the purpose for enacting § 11-9-402. We should not continue this legal fallacy at the expense of workers whose injuries clearly arise out of the course of their employment. The rule that an employer is not a statutory employer unless it contracts with a third party leads to absurd and unfair results, nowhere more vividly demonstrated than in the instant case. By affirming, we are saying to Callahan, "Yes, you were clearly injured in the course of your work. Your injury is compensable under the workers' compensation statutes. But, you cannot recover under those statutes simply because: (a) Riddell Flying Service failed to provide workers' compensation coverage; (b) the AFC was not contractually obligated to a third party to perform fire-suppression services; and (c) the stipulation it entered into is meaningless."

Although not acknowledged by the majority opinion, to-day's decision denies Callahan any remedy under the workers' compensation system. That means RFS may be susceptible to suit in tort for Callahan's injuries and related damages. This may seem, at first, to present Callahan with a chance to obtain a recovery. But when one remembers that the very purpose for creating the workers' compensation system was to provide faster, less litigious, and more predictable relief to injured workers, any notion that Callahan is receiving just treatment is quickly erased. In view of the decisions he has received thus far, Callahan may wonder whether RFS will even be subjected to the penalty allowed under Ark. Code Ann. § 11-9-406 (Repl. 2002) for its failure to secure payment of compensation.

When the Arkansas General Assembly made a sweeping overhaul of the workers' compensation law in 1993, it issued a stern statement about its motivation:

> In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of

the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

Ark. Code Ann. § 11-9-1001 (Repl. 2002). The decision in this case represents the kind of mischief the General Assembly had in mind. The statutory-employer liability provided by § 11-9-402 has been so judicially narrowed that even a stipulation showing the connection by the purported statutory employer to the work that produces a compensable injury achieves nothing for an injured worker. Today's decision is anything but just.

I respectfully dissent.